**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**AUG 8 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES HELLUMS,

    Petitioner-Appellee and
    Cross-Appellant,

v.

JOE WILLIAMS, Warden,

    Respondent-Appellant and
    Cross-Appellee.

Nos. 00-2100 and 00-2109
(District of New Mexico)
(D.C. No. CIV-96-63-MV)

## ORDER AND JUDGMENT[*]

Before **SEYMOUR**, **HOLLOWAY**, and **MURPHY**, Circuit Judges.

## I. INTRODUCTION

Petitioner James Hellums was convicted by a jury on eight counts of

criminal sexual penetration of a minor in the first degree (CSP) and two counts of

criminal sexual contact of a minor (CSC). *See* N.M. Stat. Ann. § 30-9-11(A), (C);

§ 30-9-13(A). On habeas review, the federal district court granted relief on the

---

[*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

CSP convictions, concluding the admission of expert testimony which vouched for the victim's credibility violated Hellums' constitutional right to due process. The district court denied relief on the CSC convictions. Respondent filed an appeal from the grant of habeas on the CSP convictions; Hellums filed a cross-appeal from the denial of habeas on the CSC convictions. Exercising jurisdiction pursuant to 28 U.S.C. § 1291 and 28 U.S.C. § 2253, this court **affirms** the district court.

## II. BACKGROUND

Hellums was charged by the state of New Mexico with sexually abusing his adopted daughter in a ten-count indictment. The indictment arose from allegations brought to the attention of the victim's grandmother after a family gathering in November 1989 in which the victim informed her grandmother that her father had sexually touched her. Hellums ultimately was indicted on eight counts of CSP, including one count of fellatio, one count of digital penetration of the victim's vagina, and one count of digital penetration of the victim's anus for the time period in which the Hellums family lived in an apartment. *See* N.M. Stat. Ann. § 30-9-11(A), (C). In addition, he was indicted on one count of each of these acts for the time period in which the family lived in a house.[1] The final

---

[1] The location of the sexual abuse is relevant to the testimony of the victim who described the time frame for the abuse in terms of where the family was living at the time. The indictment charges Hellums with committing the specified

two CSP counts charged Hellums with engaging in vaginal intercourse and anal intercourse with the victim during the time period spanning the family's occupation of the apartment and the house. Hellums also was charged with two counts of CSC. *See id.* § 30-9-13(A).

After a jury trial, Hellums was convicted on all ten counts of the indictment. The trial court sentenced Hellums to consecutive terms of eighteen years for each of the CSP convictions and three years for each of the CSC convictions, for a total of 150 years of which ninety years were suspended. Hellums' convictions were affirmed on direct appeal and his petition for post-conviction relief was denied in state court proceedings. Hellums' habeas petition in federal district court, however, was granted with respect to the CSP convictions based on the erroneous admission of expert testimony which vouched for the victim's credibility. The district court denied Hellums' petition with respect to the CSC convictions.

Respondent appeals the district court's grant of habeas relief on the CSP convictions, claiming the admission of the expert's erroneous testimony was harmless. Hellums appeals the district court's denial of habeas relief on the CSC

_____

acts between October 25, 1985 and November 30, 1986 and again during the period of time from December 1, 1986 to November 22, 1989. The first set of dates corresponds with the time in which the family was living in an apartment; the second set of dates corresponds with the time in which the family was living in a house.

convictions, alleging (1) his right to a fair trial was violated by the introduction of expert testimony that vouched for the victim's credibility; (2) his right to a fair trial was violated by the admission of sexually-oriented physical evidence and testimony; (3) his right to due process was violated because the evidence presented at trial was insufficient to support his conviction; (4) he received ineffective assistance of counsel during the state court proceedings; and (5) his right to a definite deadline for retrial was violated.

## III. DISCUSSION

In reviewing the grant or denial of a petitioner's habeas corpus petition, this court accepts the district court's factual findings unless they are clearly erroneous and reviews its legal conclusions *de novo*. *See Richmond v. Embry*, 122 F.3d 866, 870 (10th Cir. 1997); *Hill v. Reynolds*, 942 F.2d 1494, 1495 (10th Cir. 1991). The scope of this court's review is limited to reviewing a petition only for a violation of the Constitution, laws, or treaties of the United States. *See Romano v. Gibson*, 239 F.3d 1156, 1166 (10th Cir. 2001); *Jackson v. Shanks*, 143 F.3d 1313, 1317 (10th Cir. 1998). A federal court may grant habeas corpus relief due to state evidentiary errors only if the error was "so grossly prejudicial that it fatally infected the trial and denied the fundamental fairness that is the essence of due process." *See Williamson v. Ward*, 110 F.3d 1508, 1522 (10th Cir. 1997). Because Hellums filed his habeas corpus petition before the effective date of the

Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), pre-AEDPA

standards apply to the case. *See Moore v. Gibson*, 195 F.3d 1152, 1160-61 (10th

Cir. 1999).[2]

## A. Expert Testimony

At Hellums' trial, the state elicited testimony from several witnesses who

examined the victim after the alleged sexual abuse came to light. Two of the

witnesses were Julia Barker, a child and family counselor, and Dr. Robert

Zussman, a clinical psychologist. In seeking habeas relief below, Hellums alleged

both of these expert witnesses impermissibly vouched for the victim's credibility

by indicating that they believed her allegations. Hellums claimed the vouching

invaded the jury's province to determine the victim's credibility in violation of

his right to due process.

---

[2] Because this appeal was filed after the effective date of the AEDPA, Hellums was required to obtain a certificate of appealability (COA). *See Slack v. McDaniel*, 529 U.S. 473, 481-82 (2000) (holding the post-AEDPA version of 28 U.S.C. § 2253 controls petitioner's right to appeal denial of habeas relief when appeal is filed after effective date of AEDPA). Respondent claims the district court issued a COA only on the issue of the expert witness testimony relating to the victim's credibility. Hellums, on the other hand, argues the district court issued a blanket COA to its order denying relief on the other issues Hellums raised in his habeas petition. *Cf. LaFevers v. Gibson*, 182 F.3d 705, 710-11 (10th Cir. 1999) (noting that blanket COAs are improper but that once COA is granted, even if erroneously, this court must review the merits). Regardless of whether the district court granted a blanket COA, this court concludes Hellums made a "substantial showing of the denial of a constitutional right" which leads this court to grant a COA as to the issues Hellums raises on appeal. *See* 28 U.S.C. § 2253(c)(2).

Adopting the magistrate's report and recommendation (R & R), the district court agreed with Hellums with respect to Barker's testimony. The district court granted habeas relief on the CSP convictions but denied such relief as to the CSC convictions. Hellums objected to the magistrate's R & R with respect to the CSC convictions. Respondent filed an untimely objection to the R & R with respect to the CSP convictions. On appeal, Hellums claims he was denied a fair trial and requests this court to reverse the district court's denial of habeas relief on his CSC convictions. Respondent seeks a reversal of the grant of habeas relief on Hellums' CSP convictions.

New Mexico's evidentiary rule on admissible expert testimony corresponds with the federal rule. Both rules allow experts to testify if their testimony will assist the trier of fact in understanding the evidence or determining a fact in issue. *See* N.M.R. Ann. 11-702; Fed. R. Evid. 702. In abuse cases, experts may testify that an alleged victim suffers from symptoms consistent with sexual abuse. *See United States v. Charley*, 189 F.3d 1251, 1264 (10th Cir. 1999); *State v. Alberico*, 861 P.2d 192, 210 (N.M. 1993). Experts, however, may not comment on the alleged victim's credibility. *See United States v. Whitted*, 11 F.3d 782, 785-86, 787 (8th Cir. 1993); *Alberico*, 861 P.2d at 210-11. Such comments exceed the scope of the expert's specialized knowledge and merely inform the jury that it should reach a particular conclusion rather than allowing the jury to decide the

ultimate issue of sexual abuse.  *See United States v. Shay*, 57 F.3d 126, 131 (1st Cir. 1995).  Expert testimony, based on the statements of an alleged victim, that sexual abuse in fact occurred is inadmissible.  *See Charley*, 189 F.3d at 1267; *State v. Lucero*, 863 P.2d 1071, 1075 (N.M. 1993); *Alberico*, 861 P.2d at 211. Statements that assume the fact of abuse are also inadmissible.  *See Charley*, 189 F.3d at 1270.

During her testimony at trial, Barker consistently made statements in which she assumed the truth of the victim's allegations or affirmatively indicated that the abuse had occurred based on the victim's statements to her.  For example, Barker testified that it was clear to her that the victim "has her own memory of incidents of fellatio."  Even Respondent concedes that Barker's testimony constituted impermissible vouching.

Zussman, on the other hand, generally followed the rule which allows an expert to testify that an alleged victim suffers from symptoms consistent with sexual abuse.  He testified that the victim's "behavior and her psychological test results were consistent with what both the research and [his] clinical experience indicates is commonly found in child sexual abuse."  On cross-examination, however, one of Zussman's lengthy responses to a question posed by Hellums' counsel clearly went beyond both the scope of admissible testimony and the questioning by counsel.  In addressing whether he thought some of the victim's

behavioral problems stemmed from her dysfunctional family, Zussman indicated that the victim's behavior was typical of sexual abuse victims but may have resulted from dysfunctional family dynamics as well. This statement was permissible testimony under the state evidentiary rules. *See Alberico*, 861 P.2d at 210 (permitting expert testimony that an alleged victim suffers from symptoms consistent with sexual abuse). After having answered the question posed by counsel, however, Zussman continued to testify that he found no reason to question the victim's allegations of sexual abuse. In this part of Zussman's testimony, he plainly invaded the jury's province to determine whether the victim was credible. Zussman's statements informed the jury that it should reach a particular conclusion rather than allowing it to draw inferences from his testimony on the ultimate issue of sexual abuse.

The erroneous admission of Barker's and Zussman's testimony provides a foundation for habeas relief only if this court determines that it was prejudicial under the harmless-error analysis. *See Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). The proper inquiry does not focus on whether, without the inadmissible testimony, there was sufficient evidence to convict Hellums on the CSC and CSP charges. *See Kotteakos v. United States*, 328 U.S. 750, 765 (1946). Rather, this court must determine whether, in light of the entire record, Barker's or Zussman's testimony so influenced the jury that it had a substantial and

injurious effect in determining the jury's verdict. *See Brecht*, 507 U.S. at 638; *Tuttle v. Utah*, 57 F.3d 879, 884 (10th Cir. 1995); *Brewer v. Reynolds*, 51 F.3d 1519, 1529 (10th Cir. 1995).

*1. CSC Convictions*

To convict Hellums on the CSC counts, the jury was compelled to find Hellums unlawfully and intentionally touched or applied force to the intimate parts of the victim. *See* N.M. Stat. Ann. § 30-9-13. Unlawful touching occurs when the touching is done to arouse or gratify sexual desire or to otherwise intrude upon the bodily integrity of a minor. *See State v. Osborne*, 808 P.2d 624, 631 (N.M. 1991).

Hellums' admissions with respect to the CSC counts were devastating to his defense and overwhelmingly compelling even in light of the impermissible vouching. Prior to his arrest, Hellums spoke with Detective Babcock about the allegations of sexual abuse. The conversation was taped and played for the jury during the state's presentation of evidence at trial. During the interview, Hellums admitted to touching his daughter's "sex parts" three-and-a-half years prior to their conversation.[3] Hellums asserted, "I did probably fondle her and caress her a couple times." He defined fondling and caressing as touching her "sexual

---

[3] The time specified in the indictment during which the CSC was alleged to have occurred corresponds with the period of time described by Hellums.

organs." Babcock questioned Hellums about the details of the fondling, asking whether his finger ever penetrated the victim. Hellums replied, "No, because I knew it would hurt her if I did, and I had no intention of hurting her." Babcock further asked whether Hellums touched her over or under her clothing. Hellums responded, "Mostly over clothing. I think one time I run [sic] my finger over her skin, touched her [labia]." Detective Babcock asked Hellums whether it was pleasurable to touch the victim, to which he replied, "After I did it and thought about it, not really." Babcock asked if it was pleasurable at the time, and Hellums responded, "I guess I thought so."

Hellums further hurt his credibility by changing his testimony at trial from the statements he made during the taped conversation with Babcock. At trial, Hellums admitted that he accidentally touched his daughter but indicated that he had no intent to become sexually aroused by doing so. On cross-examination, the state read the portion of the taped conversation to Hellums in which he admitted to being aroused at the time he touched his daughter. When questioned by the prosecution about whether the statement was true, Hellums responded, "Yes, sir, if that's what's written down there, then I would say it probably is. Has to be."

Hellums contradicted himself again at trial when he described the circumstances surrounding the incidents of the touching for which he could remember the details. When talking to Babcock, Hellums initially indicated that

-10-

he put his hand between the victim's legs when he was tickling her, and later in the interview he indicated that he put his hand between her legs when she went over to give him a hug while he was watching television. At trial, however, Hellums testified that he had put his hand between his daughter's legs only to warm her legs after she had been outside in the cold.

In the context of Hellums' admissions and credibility problems, this court concludes that the inadmissible expert testimony was harmless. Regardless of how Barker and Zussman may have bolstered the victim's credibility, Hellums devastated his own defense. Given his admissions and inconsistent statements, the vouching testimony was not prejudicial to Hellums on the CSC charges.

*2. CSP Convictions*

On appeal, Respondent claims the district court erred in granting Hellums habeas relief on the CSP convictions because Barker's testimony constituted harmless error. Respondent, however, failed to file a timely objection to the magistrate's R & R. When a party fails to timely object to a magistrate's R & R, this court applies a firm waiver rule which bars appellate review. *See Vega v. Suthers*, 195 F.3d 573, 579 (10th Cir. 1999). The waiver rule does not apply, however, if the interests of justice demand otherwise. *See Theede v. United States Dep't of Labor*, 172 F.3d 1262, 1268 (10th Cir. 1999). This court has under certain circumstances reviewed the merits of a claim, as one factor among

many, in deciding whether to apply the "interests of justice" exception to the waiver rule. *See Key Energy Res. Inc. v. Merrill (In re Key Energy Res. Inc.)*, 230 F.3d 1197, 1200 (10th Cir. 2000); *Vega*, 195 F.3d at 580 n.7; *Theede*, 172 F.3d at 1268.

Assuming, without deciding, that such an analysis is appropriate in the context of this case, this court concludes that there is little merit to Respondent's claim that Barker's testimony constitutes harmless error with respect to the CSP convictions. Unlike Hellums' compelling admissions in support of the CSC convictions, Hellums made no such admissions in support of the CSP convictions. Neither during the taped conversation with Detective Babcock nor at trial did Hellums admit to penetrating the victim. Given the absence of any admissions in the context of the impermissible vouching, this court's decision to apply the firm waiver rule is consistent with the "interests of justice." The district court's grant of habeas on the CSP convictions is therefore affirmed.

## B. Hellums' Remaining Claims

### 1. Sexually-Oriented Evidence and Testimony

Hellums also claims he was denied a fair trial as to the CSC convictions because of the admission at trial of sexually-oriented physical evidence and testimony. Specifically, Hellums asserts the trial court impermissibly admitted (1) pornographic photographs and sexually-oriented books seized during the

search of his house; (2) testimony by Detective Babcock that he found pornographic magazines and videos, a vibrator, and anal lube in Hellums' house; and (3) testimony by the victim's grandmother that Hellums had rubbed against her chest in a sexual manner. Hellums argues that at the very least the cumulative effect of the inadmissible evidence deprived him of a fundamentally fair trial. Although this court closely examined the record with respect to Hellums' claims, we need not spend much time discussing them. Even assuming admission of the pornographic photographs, sexually-oriented books, and testimony was improper, the error—cumulative or not—was harmless in light of the devastating nature of Hellums' admissions.

*2. Sufficiency of the Evidence Claims*

Hellums claims the government presented insufficient evidence at trial to support the eight counts of CSP and two counts of CSC on which he was convicted. The district court rejected his arguments below. This court reviews the district court's determinations *de novo*. *See Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). In reviewing a sufficiency of the evidence claim, this court must view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of each crime beyond a reasonable doubt. *See Romano*, 239 F.3d at

-13-

1164.  This court, however, neither weighs the evidence nor considers witness credibility.  *See Wingfield v. Massie*, 122 F.3d 1329, 1332 (10th Cir. 1997).

Because this court affirmed the district court's grant of habeas relief on the CSP convictions, we need not examine Hellums' sufficiency claim with respect to these convictions except to analyze the Double Jeopardy implications.  To determine whether Double Jeopardy bars retrial on the CSP counts, this court must examine all of the evidence from trial, including erroneously admitted evidence.  *See Lockhart v. Nelson*, 488 U.S. 33, 34 (1988) (holding when "the evidence offered by the State and admitted by the trial court—whether erroneously or not—would have been sufficient to sustain a guilty verdict, the Double Jeopardy Clause does not preclude retrial"); *see also United States v. Wacker*, 72 F.3d 1453, 1465 (10th Cir. 1996).  Double Jeopardy would preclude retrial of Hellums on the CSP charges if this court were to determine that there was insufficient evidence to convict him even with the inadmissible evidence detailed above.  *See Lockhart*, 488 U.S. at 40.

At trial, the state amassed a significant amount of testimony against Hellums.  The victim testified by videotaped deposition that Hellums made her "suck on his private part" more than once while they were living in the apartment and the house.  She testified that one time ejaculate came out of Hellums penis and went into her mouth.  The victim also testified that Hellums put his penis

-14-

inside of "[her] back private and [her] front private." She indicated that this happened more than once.

Detective Babcock testified that the victim indicated to him that Hellums stuck "his private in [her] private." Specifically, she told the detective that her dad stuck his penis in her anus on numerous occasions. The state also relied on Dr. Carol Geil who testified that the victim told her during a medical evaluation that Hellums "always does the 'F' word with me," "he sticks his finger up my private," and "makes me suck his private." Dr. Geil further testified that her medical examination findings were "consistent with the history that [the victim] gave" even though they were "nonspecific in terms of the other overall findings." She indicated that there was "increased vascularity of [the victim's] hymenal area" that could have been caused by "rubbing or traumatic injury to the area." Dr. Geil indicated that there was more rounding in the victim's hymeneal area than she normally sees, which was consistent with non-accidental trauma. Another doctor called by the state, Dr. Kathleen Christopherson, testified that the victim told her that Hellums had "stuck his finger in her private" many times.

Hellums' wife, Mary, testified that her daughter had told her about the alleged sexual abuse a few years prior to the criminal charges being filed against Hellums. Specifically, the victim told Mary that she had engaged in fellatio with

-15-

her father. Mary further testified that Hellums admitted to putting his penis in their daughter's vaginal area.

Even though some of their testimony was improperly admitted at trial, the testimony of Barker and Zussman also supports the CSP convictions. Barker testified that the victim indicated that Hellums had put his penis in her mouth. Barker further testified that the victim's emotional functioning and coping were consistent with children who have experienced extensive abuse over time from a young age. Zussman testified that the conclusion he reached based on his evaluation of the victim was that her behavior and psychological test results were consistent with other sexually-abused children.

Hellums claims the inconsistencies in the victim's testimony regarding the allegations suggest that no reasonable juror could find her credible or convict him on the specified charges. It is true that the young girl had difficulty specifying the actual dates of the sexual abuse and her age at the time of the abuse. She was definitive, however, in her statements about the particular locations in which the abuse occurred, specifying that the abuse began while her family was living in the apartment and continued after they moved to the house. The charges in the indictment corresponded to these two time periods. Simply because an eight year old child defines a period of time based on her residence in a specific location rather than by the specific dates does not make her "wholly incredible" as

Hellums suggests. Although Hellums denied his daughter's allegations at trial, the jury was entitled to credit her testimony over Hellums' conflicting testimony. *See United States v. Valadez-Gallegos*, 162 F.3d 1256, 1262 (10th Cir. 1998).

An examination of the evidence presented at trial compels this court to conclude that there was sufficient evidence to convict Hellums on the CSP counts. Because there was no failure to produce sufficient evidence at trial on the CSP charges, Double Jeopardy does not bar the state from retrying Hellums.

With respect to the CSC counts, this court must determine whether Hellums' sufficiency claim requires this court to grant habeas relief. The evidentiary sufficiency inquiry requires this court to examine whether there was sufficient evidence to support the convictions without the inadmissible evidence. *See United States v. Tome*, 61 F.3d 1446, 1455 (10th Cir. 1995) (contrasting the analyses for the harmless-error inquiry, in which the analysis includes an examination of the erroneously admitted evidence in light of the entire record, and the evidentiary sufficiency inquiry, in which the inadmissible evidence is omitted from the analysis altogether and only the properly admitted evidence is examined).

The victim testified that Hellums touched her "private parts" during the time they lived in the apartment and the house. She further testified that Hellums put his penis on the outside of "[her] back private and [her] front private." Mary

testified that Hellums admitted to her that he had touched their daughter and he apologized to Mary for doing so. Dr. Geil testified that Mary indicated that her daughter had told her a couple years before about Hellums "touching her in her private parts." Dr. Geil indicated that Mary told her that Hellums admitted to touching their daughter and claimed to want help to stop touching her. A social worker corroborated Dr. Geil's testimony regarding Mary's statements about Hellums' admission. Most devastating to Hellums, however, was his own admission that he had fondled his daughter. Even setting aside the improperly admitted evidence from trial, the admissible evidence overwhelmingly supports the jury's decision to convict Hellums on the CSC charges.

*3. Ineffective Assistance of Counsel Claim*

Hellums claims he was deprived of his right to effective assistance of counsel in the state court proceedings. He asserts that his counsel failed to object to the admission of the vouching testimony and failed to investigate evidence that the photographs of a young girl performing fellatio on an adult male, which were admitted at trial, were taken on film that was no longer manufactured at the time the alleged sexual abuse occurred with his daughter. Because Hellums has already obtained habeas relief on the CSP convictions, this court analyzes his ineffective assistance claim only to determine whether habeas relief should be

-18-

granted on the CSC convictions. This court reviews Hellums' claim *de novo*. *See Houchin v. Zavaras*, 107 F.3d 1465, 1469 (10th Cir. 1997).

To prevail on his claim, Hellums must demonstrate that (1) counsel's performance was objectively deficient, and (2) counsel's deficiency prejudiced the defense such that, but for counsel's errors, there is a reasonable probability that the outcome of the trial would have been different. *See Gonzales v. McKune*, 247 F.3d 1066, 1072 (10th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Hellums claims his counsel not only prejudicially failed to object to the expert testimony at trial but that he further exacerbated its prejudicial impact on cross-examination by eliciting more vouching testimony. Hellums also asserts the photographs of what the state claimed to be the victim performing fellatio on Hellums constituted the most prejudicial physical evidence admitted by the state at trial because the photographs directly supported the offense for which he was charged. This court concluded above, however, that admission of the vouching testimony and the pornographic photographs was harmless error with respect to the CSC convictions in light of the devastating nature of Hellums' admissions. Thus, even assuming counsel's performance was rendered deficient by his failure to object to the vouching testimony and failure to investigate the production date of the film used for the pornographic photographs, Hellums cannot establish that

he was prejudiced by the deficiency. Without counsel's errors, it is highly unlikely that the trial outcome would have been different.

*4. Timing of Retrial*

In his brief-in-chief, Hellums maintains the district court erred by giving discretion to the state trial court to determine the date by which he must be retried. Hellums asserts that is it the responsibility of the federal habeas court to set a definite deadline for retrial. In his reply brief, however, Hellums indicates that in ruling on Respondent's motion to stay the grant of habeas on the CSP convictions, the district court "orally ordered that the state retry Mr. Hellums within five months of when the court's granting of habeas relief becomes final on appeal." Because Hellums has already obtained the relief he requested, this issue is moot.

## III. CONCLUSION

For the reasons set forth above, this court **AFFIRMS** the district court.

Entered for the Court


Michael R. Murphy
Circuit Judge