**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JAN 5 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

MATTHEW RICHARD PARKER,

Petitioner-Appellant,

v.

H.N. "SONNY" SCOTT,

Respondent-Appellee.

No. 02-5202

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CV-99-888-K)**

---

R. Thomas Seymour (C. Robert Burton with him on the brief), Seymour Law Firm, Tulsa, Oklahoma, for Petitioner-Appellant.

William J. Holmes (W. A. Drew Edmondson, Attorney General of Oklahoma, and Kellye G. Bates, Assistant Attorney General, on the brief), Office of the Attorney General for the State of Oklahoma, Oklahoma City, Oklahoma, for Respondent-Appellee.

---

Before **McCONNELL** , **BALDOCK** , and **TYMKOVICH** , Circuit Judges.

---

**TYMKOVICH** , Circuit Judge.

Petitioner Matthew Richard Parker appeals from the district court's denial of his petition for a writ of habeas corpus, brought pursuant to 28 U.S.C. § 2254 (2000), following his conviction, sentencing, and appeal in Oklahoma state courts. A jury found Parker guilty of one count of sexual abuse of a seven-year-old child under Okla. Stat. tit. 21, § 843 (1991), *replaced by* Okla. Stat. tit. 10, § 7115 (Supp. 1995). Parker was sentenced to life imprisonment. *See* Order, No. 99-CV-888-K(M), at 1 (N.D. Okla. Oct. 29, 2002). We have jurisdiction of his appeal under 28 U.S.C. § 1291 (2000) and 28 U.S.C. § 2253 (2000).

Applying the deferential standard of review contained in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) to the Oklahoma Court of Criminal Appeals's holding, we conclude that Parker's trial did not violate his constitutional rights. We therefore AFFIRM.

## I. BACKGROUND

*A. The Issues on Appeal*

On appeal Parker raises the following due process and ineffective assistance of counsel claims:

(1)    His due process rights were violated at trial,

        a.    because of the impermissible vouching for the credibility of the child victim by a child abuse expert and two state officials;

-2-

b.  because of the admission of inherently unbelievable testimony by the child victim;

c.  because of the trial judge's denial of a request for production of an investigator's notes during trial; and

d.  because of the use of jury instructions that did not properly set forth the elements of the crime under Oklahoma law.

(2)  He was denied the effective assistance of trial counsel because of the overall conduct of his defense.

He also raises several other claims relating to the conduct of counsel or the admission of testimony or evidence at trial that he did not raise in the district court. We conclude those claims are waived. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999).

*B. The Charge and the Trial*

In March 1996, Parker was accused of repeatedly sexually abusing a seven-year-old child his fiancee babysat. Parker's arrest came after the child related the abuse to her mother who in turn contacted the police. Oklahoma state authorities subsequently conducted an investigation and interviewed the child. The interviewers included James Lovett, a State Department of Human Services Child Welfare Investigator, and Corporal Rex Berry, a Tulsa Police Department Officer. Additionally, Dr. Nancy Inhoffe, a pediatrician, interviewed and conducted a physical examination of the child. Following the investigation, the State indicted Parker for sexual abuse of a minor child.

The trial occurred in March 1997.  The prosecution put forth the child as its main witness.  The child testified that the abuse occurred between August 1994 and October 1995 at two different homes in Tulsa County.  She stated that during the time in which Parker's fiancee was her babysitter, Parker would get on top of her and "stick his private in [her] private," as well as on her "bottom."  App. at 348, 350.  She also described how his sexual organ appeared, noting that it had a mole on it, and testified that during these incidents something that felt like "[r]aindrops" would land on her stomach.  *Id.* at 351, 348.  Some of the child's testimony was less clear, however, such as the number of times she had been abused, whether she pretended to be asleep during the abuse, and in what room of the homes the abuse occurred.

The child's mother testified regarding how she came to learn about these incidents from the child and the steps she then took to contact authorities.  Additionally, Lovett and Berry each testified about their interviews with the child.  The prosecution also called Dr. Inhoffe as an expert witness.  Dr. Inhoffe testified that a child's excessive sexual knowledge could evidence sexual abuse.  App. at 424.  She also explained that this particular child's "knowledge of sexual contact was in excess of what she should know for her age."  *Id.* at 406.

Parker testified in his own defense.  He also called nine witnesses, including his fiancee, whom he had married prior to trial.  Parker and his wife

-4-

both vehemently denied the allegations against Parker.  Parker also called Dr. Inhoffe as an adverse witness.  A jury found Parker guilty and recommended a sentence of life imprisonment.  After his conviction, Parker lost on direct appeal to the Oklahoma Court of Criminal Appeals.  *See* Summary Opinion, No. F-97-661 (Okla. Crim. App. Oct. 19, 1998) (OCCA Order).  He did not seek state post-conviction relief.

In October 1999, Parker filed a federal petition for writ of habeas corpus, raising numerous grounds for relief.  The district court denied relief on all grounds in October 2002, and this Court granted a certificate of appealability in June 2003.  *See* Order, No. 99-CV-888-K (M), at 1 (N.D. Okla. Oct. 29, 2002) (District Court Order); Order, No. 02-5202 (10th Cir. June 26, 2003).

## II.  AEDPA STANDARD OF REVIEW

Our review of this case is governed by AEDPA.  *See Upchurch v. Bruce*, 333 F.3d 1158, 1162 (10th Cir. 2003).  Under AEDPA, "federal habeas review of state convictions is limited when the state courts have adjudicated a claim on the merits."  *Cook v. McKune*, 323 F.3d 825, 829 (10th Cir. 2003).  Where, as here, state courts have adjudicated the petitioner's claims on the merits, we may only grant a writ of habeas corpus if the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or (2) "was based on an

-5-

unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d) (2000).

Parker does not argue that the OCCA's decision was "contrary to" clearly established federal law. Rather, he claims that the OCCA unreasonably applied federal law in adjudicating his claims. A state court unreasonably applies federal law when it (1) "identifies the correct governing legal rule from the Supreme Court's cases but unreasonably applies it to the facts," or (2) "either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Carter v. Ward*, 347 F.3d 860, 864 (10th Cir. 2003) (citing *Valdez v. Ward*, 219 F.3d 1222, 1229–30 (10th Cir. 2000)); *see also Williams v. Taylor*, 529 U.S. 362, 407 (2000). "An 'unreasonable application of federal law is different from an incorrect application of federal law,'" *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (quoting *Williams*, 529 U.S. at 410), and "is to be evaluated by an objective standard." *Mitchell v. Gibson*, 262 F.3d 1036, 1045 (10th Cir. 2001) (citing *Williams*, 529 U.S. at 409–10). Thus, even an incorrect application of federal law can be "reasonable" under this standard.

Furthermore, under § 2254(d)(1), the only "federal law" we consider is "clearly established federal law as determined by decisions, not dicta, of the Supreme Court." *Cook*, 323 F.3d at 830 (citing *Williams*, 529 U.S. at 412); *see*

*also Anderson v. Mullin*, 327 F.3d 1148, 1153 (10th Cir. 2003) (explaining that the § 2254(d)(1) inquiry "begins and ends with the holdings . . . of the Supreme Court's decisions as of the time of the relevant state-court decision") (citations and quotations omitted). Thus, "an absolute prerequisite for [a habeas petitioner's] claim is that the asserted constitutional right on which it rests derive in clear fashion from Supreme Court precedent." *Carter*, 347 F.3d at 863 (citing *Anderson*, 327 F.3d at 1153). Even relevant precedent of this circuit cannot prevail absent clear Supreme Court authority. *See McKinney v. Artuz*, 326 F.3d 87, 96 (2d Cir. 2003) (noting that habeas petitioner "cannot win habeas relief solely by demonstrating that the state court unreasonably applied Second Circuit precedent"); *Yancy v. Gilmore*, 113 F.3d 104, 106 (7th Cir. 1997) (noting that, under AEDPA, "We may no longer rely upon our own precedent to grant a writ of habeas corpus").

In sum, we may only grant relief under § 2254(d) if we can say, with confidence, that the OCCA's decision unreasonably applied clearly established Supreme Court law to the facts of this case. If, however, the OCCA's decision is an objectively reasonable application of Supreme Court law, then relief "shall not be granted," 28 U.S.C. 2254(d)(1), even if we would have reached a different result under our own independent review. *See, e.g.*, *Elliott v. Williams*, 248 F.3d

1205, 1207 (10th Cir. 2001).  With this standard of review in mind, we consider

Parker's specific due process and ineffective assistance of counsel claims.

## III.  DUE PROCESS

The main thrust of Parker's due process claims are a series of rulings by the

trial court that he claims violated his right to due process of law.  Specifically, he

claims that the trial court made the following errors:  (A) allowing testimony from

Dr. Inhoffe, Mr. Lovett, and Corporal Berry that impermissibly bolstered, or

"vouched" for, the child's credibility by setting forth the witnesses' belief in the

accuracy of the child's statements; (B) allowing testimony from the child victim

that was unbelievable as a matter of law; (C) denying a mid-trial document

request; and (D) giving a jury instruction that omitted an element of the offense.

Each of Parker's due process claims are considered below.

> A.  *The prosecution witnesses did not violate Parker's Due Process rights by improperly bolstering the credibility of the child's testimony*

Parker's first argument is that the Oklahoma state trial court improperly

allowed three witnesses to shore up the child's testimony by "vouching" for her

credibility.  Specifically, he complains that the expert witness testimony of Dr.

Inhoffe and the lay witness testimonies of Lovett and Berry deprived him of a fair

trial by taking away from the jury the question of whether sexual abuse occurred.

According to Parker, vouching occurred when the witnesses either stated their

belief that abuse occurred or made assumptions about the fact of abuse during their testimonies. [1]

Parker raised this argument on direct appeal. Relying on Oklahoma precedent in *Lawrence v. Oklahoma*, 796 P.2d 1176 (Okla. Crim. App. 1990), the OCCA found that "none of the witnesses impermissibly vouched for the credibility of the prosecutrix" under Oklahoma law, and rejected the argument. OCCA Order at 2. The district court concluded that habeas relief for the "indirect vouching" in this case was unwarranted because the OCCA's application of *Lawrence* to affirm Parker's conviction did not violate any clearly established Supreme Court precedent. District Court Order at 6.

---

[1] Parker also contends that three additional errors exacerbated the harm caused by the alleged vouching. First, he argues that the trial court improperly failed to admit testimony that would have minimized the effect of the vouching testimony by showing the child had previous sexual experiences with her father and half-brother. Second, he contends that the prosecution failed to prove Parker actually had a mole on his penis, as alleged by the child. Third, he maintains that the trial judge inappropriately commented to the child in chambers before she testified at trial.

We need not address these arguments because Parker failed to raise them in the district court. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000) ("Petitioner did not make this argument in his revised habeas petition. Thus, this court need not consider it."); *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999) ("Because we will generally not consider issues raised on appeal that were not first presented to the district court, we do not address this issue.") (internal citation omitted).

In *Lawrence*, the OCCA found that impermissible vouching occurred where a social worker testified, with reference to a minor child, that ten-year-olds generally do not lie. 796 P.2d at 1176–77. On direct examination, the prosecutor asked the social worker whether she had formed "any kind of opinion as to what was being told to you by [the child victim]?" *Id.* at 1176. The social worker replied, in part, "Yes. . . . we usually with all the experience, et cetera, find that by ten or up to and past the age of ten they do not lie about these things. . . ." *Id.* Citing the rule that experts may not be used to assess a witness's credibility, the OCCA held that the social worker had impermissibly vouched for the truthfulness or credibility of the child victim. *Id.* at 1177*; see also Davenport v. Oklahoma*, 806 P.2d 655, 659 (Okla. Crim. App. 1991) (citing *Lawrence* for the proposition that "expert testimony may not be admitted to tell the jury who is correct or incorrect, who is lying and who is telling the truth").

Rather than basing his claim on Supreme Court law, Parker relies on two recent Tenth Circuit cases to support his vouching claim, *United States v. Charley*, 189 F.3d 1251 (10th Cir. 1999), and *Hellums v. Williams*, Nos. 00-2100 & 00-2109, 2001 WL 892492 (10th Cir. Aug. 8, 2001). In *Charley*, five health care professionals testified for the government in a sexual abuse case involving allegations by two children that they had been sexually abused. 189 F.3d at 1256. One of the issues we faced on direct appeal was whether some of those witnesses

had impermissibly vouched for the credibility of the children's allegations. A medical doctor stated her "final conclusion" on direct examination, which was that both children had in fact been abused. *Id.* at 1266. We held that this testimony was inadmissible under Federal Rule of Evidence 702 because it impermissibly vouched for the children's credibility. *Id.* at 1268. Significantly, we also held that vouching had not occurred with respect to three witnesses that opined the children's symptoms were consistent with sexual abuse. *Id.* at 1264–65, 1269.

We also found impermissible vouching in *Hellums*, an unpublished opinion applying pre-AEDPA standards. There, we held that two expert witnesses had impermissibly vouched when they made statements that either assumed the truth of the child victim's allegations or affirmatively indicated their belief that sexual abuse had occurred. 2001 WL 892492, at *3.

Parker has not cited any published case that holds vouching testimony itself violates the Due Process Clause. The cases Parker relies upon only hold that it is error under federal and state evidentiary rules to permit an expert in a sex abuse case to vouch for the victim's credibility. Moreover, Parker cannot rely on Tenth Circuit cases and other non-Supreme Court authority to show that the OCCA's decision was an unreasonable application of federal law. *See Carter*, 347 F.3d at 863–64. Regardless of whether these cases advance Parker's arguments, under

-11-

AEDPA we cannot consider *Charley* and *Hellums* as part of Parker's due process challenge.

Our analysis is not at an end, however, because Parker also alleges that the challenged testimony violated the general due process standard outlined by the Supreme Court in *Lisenba v. California*, which states:

> As applied to a criminal trial, denial of due process is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial.

314 U.S. 219, 236 (1941); *see also Romano v. Oklahoma*, 512 U.S. 1, 12 (1994); *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "Inquiry into fundamental fairness requires examination of the entire proceedings, including the strength of the evidence against the petitioner, both as to guilt at that stage of the trial and as to moral culpability at the sentencing phase." *Le v. Mullin*, 311 F.3d 1002, 1013 (10th Cir. 2002) (citing *Donnelly*, 416 U.S. at 643; *Fero v. Kerby*, 39 F.3d 1462, 1474 (10th Cir. 1994)). In conducting this fundamental fairness examination, "[w]e will not second guess a state court's application or interpretation of state law . . . unless such application or interpretation violates federal law." *Bowser v. Boggs*, 20 F.3d 1060, 1065 (10th Cir. 1994); *see also Boyd v. Ward*, 179 F.3d 904, 912 (10th Cir. 1999). We also consider defense counsel's actions, including

failures to object at trial. *Le*, 311 F.3d at 1013 (citing *Trice v. Ward*, 196 F.3d 1151, 1167 (10th Cir. 1999)).

Thus, in considering Parker's vouching allegations, we ask whether the OCCA unreasonably applied the due process principles of *Lisenba* and subsequent Supreme Court case law to the current case. Reviewing the specific testimony at issue, both individually and collectively, we conclude that the challenged testimony was not so egregious that it "fatally infected" or "necessarily prevent[ed]" a fair trial. *Lisenba*, 314 U.S. at 236. The OCCA's adjudication of this issue was therefore not an unreasonable application of Supreme Court law.

### 1. *Dr. Inhoffe's testimony*

Dr. Inhoffe, who had interviewed and physically examined the child after the incidents, testified as an expert in child abuse. Parker objects to Dr. Inhoffe's opinion testimony during three parts of the trial where she concluded that the child's excessive sexual knowledge was "consistent with" that of a victim who had been sexually abused. Near the close of her direct examination, Dr. Inhoffe testified as follows:

> Q: From what you reviewed, was [the child] consistent in what she was saying?
>
> A: Yes.
>
> Q: And after the detailed history that she had given you and that you had conducted, do you feel as though you are able to give your opinion as to whether or not she was sexually abused?

A: Yes.

Q: Would you please tell the ladies and gentlemen of this jury what your expert opinion is as to whether or not [the child] was sexually abused?

A: I believe that her information throughout the entire evaluation was consistent with a child who had been sexually abused.

App. at 411. Next, after a lengthy cross-examination that challenged the credibility of Dr. Inhoffe's direct testimony, on redirect examination the prosecution asked Dr. Inhoffe, "And is your opinion today that sexual abuse took place?" She responded "Yes." *Id*. at 428. Finally, Parker called Dr. Inhoffe as an adverse witness in the defense's case in chief. During cross-examination by the prosecution, she responded "Yes, it is" to the prosecution's question, "And is it still your opinion that [the child] was the victim of sexual abuse of a minor child?" *Id*. at 553. [2]

Whether Dr. Inhoffe's testimony amounted to impermissible vouching is a close call. Nevertheless, viewed in its entirety, we cannot conclude that her testimony violated the general due process standard outlined in Supreme Court

---

[2] Parker also argues that the prosecution magnified the trial court's error in admitting this testimony by emphasizing during closing argument Dr. Inhoffe's "expert opinion that sexual abuse had occurred." App. at 771–72. To the extent Parker is arguing that the prosecutor engaged in misconduct by relying on Dr. Inhoffe's testimony during closing argument, he has waived that argument by not raising it on direct appeal. *See infra* Part III.F. In addition, taken in the context of the entire closing argument of both parties and the trial as a whole, none of the prosecutor's statements rendered the trial fundamentally unfair.

precedent. Dr. Inhoffe's testimony centered around her medical examination of the child and statements made by the child showing precocious familiarity with the sexual function. It was Dr. Inhoffe's opinion, taken in context, that the child's statements of excessive sexual knowledge were consistent with abuse. The expert did not opine or testify that Parker committed sexual abuse. The two "statements" of opinion that sexual abuse took place consisted of only an affirmative "yes" and, taken in the context of her testimony as a whole, refer back to her view that the child had excessive sexual knowledge consistent with previous abuse. Any concern regarding Dr. Inhoffe's testimony is also undermined by the fact that after she engaged in the first two instances of allegedly vouching testimony during the prosecution's case in chief, the defense nonetheless called her to the stand as its first witness.

There is no bright line test for when such testimony crosses the line into the jury's realm. However, even if it were permissible to consider cases other than Supreme Court precedent in resolving this issue, we would find Parker's argument unpersuasive. Unlike the testimony in *Lawrence v. Oklahoma*, 796 P.2d 1176, 1176–77 (Okla. Crim. App. 1990), Dr. Inhoffe was not asked to provide opinion testimony about the child's propensity to lie or tell the truth. Furthermore, as this court found in both *United States v. Charley*, 189 F.3d 1251, 1264–1265, 1269 (10th Cir. 1999) and *Hellums v. Williams*, Nos. 00-2100 & 00-2109, 2001 WL

-15-

892492, at *3 (10th Cir. Aug. 8, 2001), experts may testify about symptoms consistent with sexual abuse without improperly vouching for the witness's credibility. Viewed in context, Dr. Inhoffe's testimony indicated that the information she gained through examination of the child was consistent with a person who suffered sexual abuse.

Accordingly, we cannot conclude that the OCCA erred by unreasonably applying the principles of *Lisenba* to Dr. Inhoffe's allegedly vouching testimony.

### 2. *Lovett's testimony*

James Lovett, an Oklahoma Department of Human Services Child Welfare Investigator, testified as a lay witness. Parker asserts that the trial court improperly allowed the following testimony by Lovett regarding his interview with the child because the testimony impermissibly vouched for the child's credibility:

> Q: Mr. Lovett, based upon your investigation, what did you do with your reports?
>
> A: After I completed the investigation I ruled it confirmed sexual abuse, finished the 14A and turned it over to the District Attorney's Office.
>
> Q: And was it Matthew Parker she was describing in those statements to you?
>
> A: Yes.

App. at 486.

-16-

This statement was made at the end of a lengthy direct examination during which Lovett described his interview with the child. While it concludes that the child made an allegation of abuse sufficient to refer the case to the district attorney for further evaluation, this is nothing more than an acknowledgment that Lovett thought there was sufficient probable cause that a crime had been committed. But that inference is true of every case in which the police or state investigators refer a matter to the prosecution for evaluation. Testimony that probable cause existed to charge the defendant with sexual abuse alone does not improperly vouch for the credibility of a particular witness or piece of evidence.

Moreover, Parker's counsel on cross-examination was able to attack Lovett's interview of the child to raise questions consistent with Parker's overall defense theory that the child had made up her story about sexual abuse. *See id.* at 512. Parker's counsel was thus able to undermine the thoroughness of the State's investigation and bolster Parker's trial theme: that he had been unjustly accused of sexual abuse of a child. Finally, Parker's counsel did not object to Lovett's testimony at trial. This underscores our view that in context the testimony did not cross the line into impermissible vouching for the child's testimony.

Accordingly, we cannot conclude that the admission of Lovett's testimony deprived Parker of his due process rights.

3. *Berry's testimony*

-17-

Finally, Corporal Berry testified regarding his investigation of the child's allegations. The testimony Parker questions is similar to his objections to Lovett's testimony. After discussing his interview with the child on direct examination, Berry gave this testimony:

Q:   After compiling all of the reports from the other agencies as well as your own interview and reports, what did you then do with this crime—this case file?

A:   At that time I reviewed—review all of the reports to see if there's any inconsistencies and it appears to be a reliable complaint, then we—I prepare a prosecution report outlining what each of the different witnesses—

***

A:   After I gather those reports, I compare them, make sure—see if there's any inconsistencies, reliability of the account, prepare a prosecution report outlining what each of the witnesses will testify to and then prepare an affidavit and forward it to—the prosecution packet with all the reports, the prosecution report and the affidavit to the District Attorney's Office.

Q:   And did you do that in this case?

A:   Yes, sir.

Q:   Were you able to make a determination that sexual abuse of a minor had occurred?

A:   I believe—

Mr. Pacenza:  Objection, Your Honor, calls for an opinion.

The Court:  Overruled.  You can answer that question yes or no.  The question is:  Were you able to make a determination, sir?  Just yes or no.

-18-

A:     Yes, sir.

*Id*. at 510–11.  The prosecutor did not ask if Berry concluded that Parker had committed the crime, nor did Berry directly testify as to the accuracy of the child's responses during the interview.

As with Dr. Inhoffe and Lovett, Berry's testimony centered around his interview of the   child.  The allegedly offensive testimony consisted of two words—"yes, sir"—spoken at the end of his direct examination testimony, confirming that he had an opinion that "sexual abuse" had occurred.  The court did not allow Berry to disclose what the opinion actually was.  While it may be obvious in context that the police viewed the evidence as sufficient to establish probable cause that a crime had been committed (after all, the case was referred for prosecution), we do not find that the OCCA erred in concluding that this testimony did not impermissibly bolster the child's testimony in a way that denied Parker his right to a fundamentally fair trial.

*4.  Conclusion*

In sum, we cannot conclude, even taking these witnesses' testimonies together, that Parker's due process rights were violated.  Although the testimony given by these three witnesses arguably shows that they believed sexual abuse had occurred, in context the testimonies do not fatally undercut the jury's determination of credibility in a case where both the child victim and the accused

testified and were subject to extensive cross-examination. Every witness called by one side will to some extent reinforce each others' testimonies if the testimony is consistent and credible. The jury was able to weigh all of the testimony against the child's trial testimony. Given AEDPA's deferential standard of review, the OCCA's conclusion that Parker's due process rights had not been violated by the trial court's admission of this testimony, in the context of the entire trial, is a reasonable application of Supreme Court precedent.

C.    *The admission of the child's testimony did not violate Parker's Due Process rights*

Parker's next argument is that the child's testimony at trial was so inconsistent that, absent corroboration, it denied him due process. Parker argues in essence that "Due Process requires some kind of corroboration to connect [Parker] to a story with inconsistencies and improbabilities in the testimony that is the basis of the conviction." Aple. App. at 32. Both the OCCA and the district court concluded that the child's testimony was not unbelievable as a matter of law, and rejected this argument.

No direct Supreme Court precedent requires corroboration of child witness testimony. Nevertheless, the OCCA and district court characterized Parker's argument as an attack on the sufficiency of the evidence to support the conviction, and analyzed the child witness testimony under cases that apply the Supreme Court's sufficiency of the evidence standard set forth in *Jackson v.*

*Virginia*, 443 U.S. 307 (1979). The *Jackson* standard derives from the right to due process and we agree that it controls our analysis here. *See Jackson*, 443 U.S. at 315 (due process requires a conviction to be based "upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged") (quoting *In re Winship*, 397 U.S. 358, 364 (1970)).

Under *Jackson*, to determine whether the child's testimony was sufficient to convict Parker, we must decide "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." 443 U.S. at 319. "This . . . standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Id*.

Parker argues that the child's testimony does not meet this standard because her testimony contained contradictions regarding (1) how many times he abused her, *see* App. at 375–76, 494–95, 502; (2) whether she was asleep during the incidents, *see id.* at 376–77, 495; (3) whether she cried during the incidents, *see id.* at 668–73; (4) in which rooms of the homes the abuse occurred, *see id.* at 366–67, 379, 522; (5) whether ejaculation occurred, *see id.* at 351, 412; (6) the color of the semen, *see id.* at 382, 485–86; and (7) whether the child's younger sister told her that Parker did not touch the child, *see id.* at 373.

We cannot conclude under AEDPA that the OCCA unreasonably applied *Jackson* in finding the child's testimony sufficient to convict. As a preliminary matter, it is axiomatic that the responsibility of adjudging the child's credibility belonged to the trier of fact, not to us. *See Jackson*, 443 U.S. at 319. We do not have the benefit of observing the witnesses in the crucible of the courtroom during direct and cross-examination and thus are not in a position to second-guess the jury's credibility determinations. To the extent Parker claims that the child gave inconsistent statements at trial and in the other interviews, his counsel had the opportunity to cross-examine the child and the other witnesses to expose the alleged inconsistencies. While the child's testimony does raise questions about the details of the assaults, none of it, standing alone or collectively, is inherently implausible. The jury was in a position to credit or discount the child's testimony and weigh the inconsistencies in light of her age and the passage of time. Parker's claims about inconsistency are primarily based on the jury's acceptance of his and the other defense witnesses' testimony over the child's. That determination, however, is distinctly within the realm of the jury, which we cannot enter on AEDPA review.

Parker argued for dismissal at the close of the prosecution's case in chief on the same grounds; namely, that the child's testimony was so inconsistent, unbelievable, and contradictory that no reasonable juror could convict. App. at

-22-

526–27. The trial court, having sat through the testimony, concluded that sufficient and credible evidence had been presented to leave the question of guilt or innocence to the jury. *Id.* at 527.

Accordingly, based on our review of the entire record, and viewing the evidence in the light most favorable to the government, a rational jury could have concluded that there was sufficient evidence to convict on every element of the offense. The child testified in detail regarding her allegations and gave explicit descriptions of the incidents. She testified about Parker's clothing and demeanor during multiple encounters. Her testimony indicated excessive sexual knowledge for a seven-year-old child. The child also gave similar accounts to her mother and investigators prior to trial. Finally, and of equal importance, the child's testimony held up under careful cross-examination by Parker's trial counsel. The jury had the opportunity to hear Parker and the other defense witnesses testify about their version of the facts, but concluded that Parker had sexually abused the child.

All of this supports the OCCA's and the district court's conclusion that a rational jury could have found sufficient evidence of guilt.[3]  Accordingly, we deny habeas relief on this ground.[4]

    D.      *The trial court did not violate Parker's Due Process rights by refusing to permit additional discovery of Lovett's notes during trial*

Parker next contends that the trial court violated his due process rights by refusing  to allow supplemental discovery of handwritten notes taken by the Oklahoma investigator during his interview with the        child.  Prior to trial, the prosecution provided to Parker's counsel the file of the Department of Human

---

[3] The OCCA rejected a sufficiency of evidence argument in a child sexual abuse case similar to this one.  In *Martin v. Oklahoma*, 747 P.2d 316 (Okla. Crim. App. 1987), the OCCA explained that "corroboration is required when the victim's testimony is so incredible or has been so thoroughly impeached that the reviewing court must say that the testimony is clearly unworthy of belief." *Id*. at 318.  However, it concluded that no corroboration was required in *Martin* because the description of the acts the victim gave to the police, his parents, and a social worker were "in such graphic detail and exhibit[ed] such a familiarity with sexual function that it would be incredible to believe that a seven-year-old boy would have knowledge of these details from any source other than personal experience." *Id*.  Furthermore, the court noted that corroboration "was present to some degree in the striking consistency of [the victim's] testimony with the accounts he gave to [other witnesses]." *Id*.

[4] Parker also argues in his brief that the child's allegedly inconsistent testimony rendered the trial fundamentally unfair, again citing *Lisenba v. California*, 314 U.S. 219 (1941).  As we have stated above, the child's testimony was not inherently implausible and the jury was given sufficient evidence upon which to base its conclusion.  Therefore, the child's allegedly inconsistent testimony did not violate due process by rendering the trial fundamentally unfair, and the OCCA's decision is not an unreasonable application of Supreme Court law.

Services, including a written report prepared by its investigator, James Lovett. During cross-examination at trial, Lovett disclosed the existence of handwritten notes that he took during the course of his interview with the child. The notes had never been part of the DHS file.

After this disclosure, Parker's attorney requested the production of the notes. The trial court denied the request on the grounds that (1) Parker had already received the DHS records he had requested, which contained a full report of Lovett's interview, (2) Parker had the opportunity to obtain Lovett's personal file prior to trial, but did not attempt to do so, and (3) Parker could make no showing that the notes were material or exculpatory. *See* App. at 491. Parker now argues that the notes would have allowed him to attack the credibility of Lovett and the child by showing that Lovett's interviewing techniques were overly suggestive.

As an initial matter, we must determine the constitutional basis of Parker's due process claim. He characterizes his claim as a violation of his Sixth Amendment right to confrontation, arguing that the trial court's ruling prohibited him from conducting an effective cross-examination of Lovett (the child had already testified). The "main and essential purpose of confrontation is to secure for the opponent the opportunity of cross-examination." *Richmond v. Embry*, 122 F.3d 866, 871 (10th Cir. 1997) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673,

678 (1986)). "[A] defendant's right to confrontation may be violated if the trial court precludes an entire relevant area of cross-examination." *Id*. (quoting *United States v. Begay*, 937 F.2d 515, 520 (10th Cir. 1999)).

Parker's claim that the district court unconstitutionally denied his discovery request cannot fall within the Confrontation Clause framework, however, because Parker had the opportunity to cross-examine Lovett. Parker's counsel in fact questioned Lovett's interviewing techniques during the cross-examination of Lovett and Corporal Berry. Parker's actual claim is therefore not that he was denied his constitutional right of confrontation, but rather that he was denied the right to obtain discovery necessary to conduct an effective cross-examination, a violation of general principles of due process. *Cf. id*. (recharacterizing the petitioner's confrontation clause claim as a due process claim that he was not able to present testimony necessary to his defense). In fact, after the OCCA held on direct appeal that the trial court's ruling was not an abuse of discretion, *see* OCCA Order at 3, the district court apparently recognized that Parker's claim did not fall within the Confrontation Clause framework and construed Parker's habeas claim as a due process challenge, concluding that the trial court's resolution of the discovery issue did not result in a fundamentally unfair trial. District Court Order at 10 (citing *Elliott v. Williams*, 248 F.3d 1205, 1214 (10th Cir. 2001)). We

agree with the district court and therefore construe Parker's allegations to claim a violation of due process.

Because the basis for Parker's challenge is that the trial court unconstitutionally denied discovery of Lovett's notes mid-trial, under AEDPA we look to the Supreme Court's due process precedent regarding the conduct of trial. Although the Court has stated that "[t]he right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the state's accusations," *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973), a defendant has the obligation to "comply with established rules of procedure . . . to assure both fairness and reliability in the ascertainment of guilt and innocence." *Id.* at 302. Parker's interest in obtaining documents mid-trial, therefore, must concomitantly "bow to accommodate other legitimate interests in the criminal trial process." *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (citations and quotations omitted).

Accordingly, our task is to balance Parker's need for the additional discovery against the court's reasons for denying the discovery. *See Richmond*, 122 F.3d at 872 (explaining that to find a due process violation in the exclusion of evidence the court "must balance the importance of the evidence to the defense against the interests the state has in excluding the evidence"). We cannot grant habeas relief unless the trial court's ruling "render[ed] the trial so fundamentally

unfair as to constitute a denial of federal constitutional rights." *Elliott*, 248 F.3d at 1214 (quoting *Vigil v. Tansy*, 917 F.2d 1277, 1280 (10th Cir. 1990)). In engaging in this fundamental fairness analysis, we reiterate that we must examine the proceedings as a whole. *See Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974).

The trial court's denial of Parker's discovery request did not violate due process. First, Parker could have requested the investigator's personal files before trial but did not do so. Instead, he only requested and in fact obtained the DHS file. Second, Parker's counsel did not lay a foundation during Lovett's examination that gave the trial court any reason to believe that the notes were not faithfully reflected in the written report prepared by Lovett and already admitted into evidence. Third, Parker's counsel did not ask the trial court for an in camera review of the notes during the course of the trial; for us it remains pure speculation whether the notes contained anything not already reflected in Lovett's written report. It is equally possible that the notes would be harmful to Parker's case, showing testimony consistent with what the jury had already heard from the child. Finally, Parker's purpose in seeking the notes was to attempt to show that Lovett used improper interviewing techniques with the Child. *See* Aplt. Op. Br. 51. However, Parker exposed the jury to this theory through his cross-examination of Corporal Berry. *See* Aplt. App. 512.

-28-

Accordingly, while it might have been the better course for the trial court to have reviewed Lovett's notes in camera before making its ruling, in light of the entire testimony, including the tactical decisions made by Parker's attorney, the court's decision to deny the document request in the middle of trial was not fundamentally unfair. The OCCA's holding that Parker was not entitled to discovery of Lovett's notes during trial was not an unreasonable application of Supreme Court law.

E.    *The jury instructions did not violate Parker's due process rights*

Parker next argues that the trial court violated his due process rights by failing to instruct the jury on a necessary element of the offense for which he was charged. Specifically, he contends that the statute under which he was convicted required the jury to find as a necessary element of the crime that he or his fiancee operated a "child care facility." *See* Okla. Stat. tit. 21, § 843 (1991), *replaced by* Okla. Stat. tit. 10, § 7115 (Supp. 1995); Okla. Stat. tit. 21, § 845 (Supp. 1994), *replaced by* Okla. Stat. tit. 10, §§ 7102 to 7105 (Supp. 1995).[5] He claims that his

---

[5] The two sections governing sexual abuse of a child operate together. Section 843 (1991) provides:

> Any *parent* or *other person* who shall willfully or maliciously . . . sexually abuse [a] child [under the age of eighteen (18)], as those terms are defined by Section 845 of this title . . . shall upon conviction be punished by imprisonment in the State Penitentiary not exceeding life imprisonment . . . . (emphasis added).

(continued...)

-29-

fiancee's informal babysitting arrangements with the child's mother did not fit under the definition of "child care facility," thereby exempting Parker from Oklahoma's sexual abuse of a minor statute. [6]

As an initial matter, Parker asserts that AEDPA's deferential standard of review should not apply to this claim because the OCCA employed an incorrect legal standard in reviewing it. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). Specifically, he argues that the OCCA should have applied *United States v. Gaudin*, 515 U.S. 506 (1995), which states the fundamental rule that due process requires a jury determination that a defendant is guilty of every element

_____

[5](...continued)
Section 845 then defines "sexual abuse" as including "rape, incest and lewd or indecent acts or proposals, as defined by law, *by a person responsible for the child's welfare*." *Id*. § 845(B)(5) (Supp. 1994) (emphasis added). Section 845 separately defines "person responsible for the health or welfare of the child" to include "an owner, operator, or employee of a *child care facility* as defined by Section 402 of Title 10 of the Oklahoma Statutes." *Id*. § 845(B)(4) (emphasis added). Finally, § 403 of Title 10, titled the Child Care Licensing Act, states that the provisions of that Act do not extend to "[i]nformal arrangements which parents make with friends or neighbors for the occasional care of their children." *Id.* § 403(A)(2).

[6] In his brief, Parker also argues that his indictment improperly charged him under Okla. Stat. tit. 10, § 7115, which did not become effective until November 1, 1995, one month after the end of the time period alleged in the information (June 1, 1994, to October 1, 1995). *See* Aplt. Br. at 47. However, Parker has failed to preserve this argument for our review because he did not raise it in the district court. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999). Furthermore, the OCCA determined under state law that Parker's indictment sufficiently outlined the charges against him, even under the older statute. *See* App. at 25 (citing *Roberson v. Oklahoma*, 362 P.2d 1115, 1117 (Okla. Crim. App. 1961)).

of the crime with which he was charged. Notwithstanding the failure of the OCCA to explicitly mention *Gaudin*, it is well settled that a state court need not cite to specific Supreme Court precedent; in fact it "need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 124 S. Ct. 7, 10 (2003) (per curiam) (quoting *Early v. Packer*, 537 U.S. 3, 8 (2002)).

We may set aside a state conviction on the basis of erroneous jury instructions when the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). On habeas review, however, "the fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief." *Id.* at 71–72 (citations omitted). Furthermore, "the [state] courts' interpretation of the state . . . statute is a matter of state law binding on this court." *Chapman v. LeMaster*, 302 F.3d 1189, 1196 (10th Cir. 2002); *see also Missouri v. Hunter*, 459 U.S. 359, 368 (1983) ("We are bound to accept the [state] court's construction of that State's statutes.") (citing *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974)); *Hatch v. Oklahoma*, 58 F.3d 1447, 1464 n.11 (10th Cir. 1995) ("Even if petitioner were to challenge this construction of [the statute] directly, we would have to defer to the Oklahoma court's construction of a state statute.") (citations omitted).

-31-

Here, the OCCA held that Parker was properly instructed under Oklahoma law.  Further, the district court concluded that the OCCA properly interpreted state law and did not violate Parker's due process rights.  With respect to Oklahoma law, the OCCA relied on *Jones v. Oklahoma*, 542 P.2d 1316 (Okla. Crim. App. 1975), in finding that § 843 supported Parker's conviction.  The OCCA also held, although its holding is opaque, that Oklahoma's sexual abuse statute did not incorporate the exemption for informal babysitting arrangements advocated by Parker.  Simply put, Oklahoma law, as interpreted by its state courts, does not include the additional element that Parker asks us on appeal to include.

As a second consideration, Parker did not object to the instruction ultimately given by the trial court.  Parker initially tendered an instruction that incorporated by reference portions of the Oklahoma code that cite the informal babysitting exception to the term "child care facility."  Parker, however, did not ask for the specific language from the exception.  After discussion with the trial judge, he finally agreed to the instruction as tendered.  Later, on appeal, he recharacterized the exception as a necessary element of the crime, but as we showed above, that argument was rejected by the OCCA.  We must accept that interpretation of state law.

Because § 843 does not require the additional element that Parker advocates, the OCCA's decision then did not run afoul of established Supreme Court case law that requires a jury determination on every element of the crime charged. We therefore cannot conclude that the OCCA unreasonably applied Supreme Court law and, accordingly, deny habeas relief on this ground.

*F.     Parker has waived his remaining due process arguments*

Parker makes three additional due process claims.     First, he argues that the prosecutor engaged in misconduct a number of times during trial. Second, he claims that Dr. Inhoffe's and Lovett's testimonies discussed incidents of abuse not alleged in the indictment. Third, he asserts that the trial judge made in camera comments to the child that violated Oklahoma's child witness law. *See* Supp. App. at 6–25. We do not review these claims because Parker failed to assert them in his district court petition for habeas relief.     *See Jones*, 206 F.3d at 958; *Rhine*, 182 F.3d at 1154.

Finding that Parker's due process rights were not violated, we now consider his claim of ineffective assistance of counsel.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

Parker's final argument is that his trial counsel rendered ineffective assistance in violation of the Sixth Amendment. He also argues that he is entitled to an evidentiary hearing on his ineffective assistance claim.

-33-

*A.    AEDPA applies to Parker's ineffective assistance claim*

Before turning to Parker's specific contentions, we must address his argument that our review is de novo because AEDPA does not apply to this claim. Parker asserts that AEDPA does not apply because the OCCA failed to apply the proper standard from *Strickland v. Washington*, 466 U.S. 668 (1984), which governs ineffective assistance claims.  *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003) (noting that AEDPA's deferential standard "does not apply if the state court employed the wrong legal standard in deciding the merits of the federal issue").  According to Parker, the OCCA applied a clear and convincing standard, instead of the reasonable probability standard outlined in *Strickland*.

We find that the OCCA applied the correct governing rule, and therefore AEDPA applies.  The OCCA did not directly cite to *Strickland* in its order, but instead relied on *Humphreys v. Oklahoma*, 947 P.2d 565 (Okla. Crim. App. 1997), a state case that applies the standard from *Strickland*.  As we have already explained, the state court need not cite to specific Supreme Court precedent, nor need it "even be aware of [such] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Mitchell*, 124 S. Ct. at 10.  Although the OCCA's order also references a clear and convincing evidence standard, it does so with regard to whether Parker should have been granted an evidentiary hearing on direct appeal, not whether he met the *Strickland* standard.

-34-

*See* Okla. Ct. Crim. App. Rule 3.11 (1998) (requiring a defendant to show "by clear and convincing evidence there is a strong possibility trial counsel was ineffective for failing to utilize or identify the complained-of evidence" before supplementing his record on appeal); *cf.* 28 U.S.C. § 2254(e)(1) (providing that a state prisoner must rebut state factual determinations by clear and convincing evidence).

Thus, because the OCCA applied clearly established federal law to Parker's ineffective assistance claim, we can only grant habeas relief if we find that the OCCA's application of that law was objectively unreasonable in light of Supreme Court precedent. *Le v. Mullin*, 311 F.3d 1002, 1024 (10th Cir. 2002). We now turn to an analysis of whether the OCCA's decision is objectively unreasonable under *Strickland*.

B.    *Application of* Strickland

To prove ineffective assistance of counsel under *Strickland*, a petitioner must show (1) that trial counsel's performance was deficient, i.e., that he "fell below an objective standard of reasonableness," 466 U.S. at 688, and (2) that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. at 694. In assessing whether counsel's performance was deficient, we must free ourselves from the "distorting effects of hindsight" by indulging in a strong presumption that counsel

acted reasonably. *Id.* at 689. Thus, counsel's performance is not deficient as long as it "falls within the wide range of reasonable professional assistance" and "might be considered sound trial strategy." *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). Parker has the burden of rebutting the presumption that his counsel acted reasonably. *Id.* The OCCA held that Parker failed to meet this burden, and the district court agreed.

### 1. *Reasonableness of counsel's performance*

We first look to the reasonableness of counsel's performance. "Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Strickland*, 466 U.S. at 689. As noted, to obtain relief on this prong, Parker must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688.

Parker argues that trial counsel acted unreasonably in two ways: first, by failing to make a number of evidentiary objections at trial and, second, by failing to introduce or obtain certain evidence.

#### a. *Failure to make objections at trial*

Throughout the course of trial, Parker's counsel made numerous evidentiary objections and also moved for a mistrial on at least six occasions. There is no doubt that Parker's counsel was aggressive in challenging the prosecution's case and the trial court's rulings at every step of the proceedings. Nonetheless, Parker argues that counsel unreasonably failed to object to (a) allegedly impermissible vouching testimony of Dr. Inhoffe, Lovett, and Berry, and (b) the child's uncorroborated testimony.

*i. Failure to object to the alleged vouching testimony*

First, Parker asserts that trial counsel should have objected to the alleged vouching testimony of Dr. Nancy Inhoffe, James Lovett, and Corporal Rex Berry. Supp. App. at 16; Aplt. Br. at 16, 18, 24. Regarding these witnesses, as the OCCA found, trial counsel could have reasonably concluded that their statements were not objectionable under Oklahoma precedent, which, at the time of trial, held that only statements directly assessing a witness's truthfulness are impermissible under the Oklahoma rules of evidence. *See Lawrence v. Oklahoma*, 796 P.2d 1176 (Okla. Crim. App. 1990). Therefore, Parker's counsel was not deficient in failing to object to this testimony.

*ii.    Failure to object to the child's uncorroborated testimony*

Parker next argues that counsel failed to object to the fact that the prosecution's only direct evidence was the child's testimony. Aplt. Br. at 23; *see also* Supp. App. at 16 (contending that counsel should have asked for an instruction on the necessity of corroborating testimony). However, counsel did object to the child's testimony by moving for a directed verdict of acquittal at the end of the state's case in chief on the grounds that the only witness to the crime was the child and her testimony was too unbelievable and contradictory to form the basis of a conviction. App. at 526. Furthermore, the OCCA found in Parker's direct appeal that state law allowed such testimony and that the trial court did not err by refusing to grant a directed verdict since the child's testimony was "not so incredible or impeached as to require corroboration." OCCA Order, at 3; *Ray v. Oklahoma*, 762 P.2d 274, 277 (Okla. Crim. App. 1988) (stating that the court may sustain rape conviction on basis of uncorroborated testimony "unless such testimony appears incredible and so unsubstantial as to make it unworthy of belief").

*b.    Failure to introduce evidence at trial*

Parker also contends that trial counsel failed to put on a proper affirmative defense because he did not introduce (a) testimony of the child victim's younger sister, (b) "physical evidence" of his innocence in the form of medical testimony

-38-

about a mole on his genitalia, (c) evidence of a prior allegation of sexual abuse made by the child's mother, and (d) a psychological examination of the child. None of counsel's actions in this regard was unreasonable.

    *i.       Failure to call the child's younger sister as a witness*

To begin, Parker contends that counsel should have called the child's younger sister to testify about three things: (1) "that she knew Petitioner had never touched [the child victim]," Supp. App. at 16, (2) that she had an argument with the child victim about Parker and his fiancee's wedding and this argument motivated the child victim to invent a story about Parker, *id.*, and (3) that Parker owned and wore blue sweat pants, whereas the child testified that Parker's sweat pants were green. App. at 1022.

We find counsel's decision not to call the child victim's sister was reasonable under the circumstances. The sister was six years old at the time of trial, App. at 111, which would have made her only four years old at the time of the events in question. Trial counsel admitted he was unsure what the child would say on the stand as a witness. *Id.* at 110. Indeed, she may have been able to corroborate evidence detrimental to Parker; for instance, that she never saw anything (corroborating the child's testimony that the incidents occurred when she and Parker were alone), *id.* at 109–11, or that she found semen-like liquid on the couch. *Id.* at 352–53, 503–04. Finally, trial counsel cross-examined the child

victim regarding the argument she had with her sister about the wedding, thus exposing the jury to this theory of defense. *Id*. at 365.

### ii. *Failure to introduce physical evidence*

Next, Parker argues that counsel should have shown by physical evidence that Parker did not have a mole on his genitalia by having Parker submit to a physical examination. Supp. App. at 16. This decision is curious. The evidence, if true, could have cast some doubt on the testimony of the child. Counsel did, however, introduce testimony from Parker's mother that he had no mole, App. at 597, and cross-examined the child's recollection of the mole. *Id*. at 380–81. Parker testified at trial that he had no mole. *Id.* at 692.

Notwithstanding this testimony at trial, Parker has failed to show at any time on appeal that exculpatory physical evidence exists, nor did he ask for the opportunity to put such evidence in the record in his direct appeal or in district court on habeas review. In fact, although Parker submitted a post-trial affidavit alleging numerous errors by his trial counsel, he did not claim that counsel should have introduced evidence concerning the mole. App. at 1033–35. Finally, although it is not entirely clear, the child's testimony can be construed as mentioning a mole *near* his genitalia; rebuttal of this testimony is not necessarily helpful or necessary to Parker's defense. *See id.* at 350, 381. Accordingly, on this record we have no reason to believe that such evidence could be produced or

would even be exculpatory. We therefore cannot conclude that counsel's decision not to introduce additional evidence was objectively unreasonable.

### iii. Failure to question or call former babysitter regarding prior allegations of abuse

Parker also asserts that his counsel should have called one of the child's former babysitters to testify to allegations of sexual abuse previously made against her husband by the child's mother. Aplt. Br. at 16–17, 24. It is not clear from the record whether the child herself made the allegations of previous abuse, which were then communicated to the former babysitter via the mother, or whether the mother was the source of the allegations. In either case, Parker's counsel was not deficient in failing to call the former babysitter as a witness.

First, in a pretrial conference between the judge and both attorneys, the trial judge questioned whether the former babysitter's testimony would be inadmissable hearsay, noting that the testimony would involve "a conversation between two women based upon what [the child] had told one of them." App. 103. The judge then expressed serious doubt as to its admissibility: "I'll even allow this [former babysitter] to testify if you can overcome the hearsay nature of her statement. I don't know how you would do that because it sounds to me like [hearsay]." *Id.* at 104. Thus, Parker's counsel could have reasonably believed that the former babysitter's testimony was inadmissible.

More importantly, even if the testimony was admissible, Parker's counsel could have reasonably concluded that the former babysitter's testimony was not relevant and would not benefit the defense. Parker's trial strategy was that the child had fabricated the allegations of abuse out of spite for Parker, and that her allegations were inconsistent, contradictory, and unbelievable. Testimony regarding previous allegations of abuse against the former babysitter's husband does not advance this trial strategy. Thus, when asked mid-trial whether he still intended to call the former babysitter, Parker's counsel replied, "I've determined I'm not going to call [her] as a witness." App. 540. We cannot say that this strategic decision fell outside "the wide range of reasonable professional assistance," *Strickland* , 688 U.S. at 689, and therefore hold that counsel was not deficient in failing to call the former babysitter as a witness.

> iv. *Failure to ask for psychological examination of the* *child victim*

Finally, Parker maintains that counsel should have requested a psychological examination of the child. On appeal, Parker claims that his trial counsel failed to seek an examination because of the mistaken belief that he could not do so under Oklahoma law. Aplt. Br. at 18; *see also* Supp. App. at 17. It is unclear whether Parker is asserting that counsel erred in wrongfully telling Parker that it was illegal to obtain such an examination or in not obtaining the examination at all. In any event, Parker has made no showing that a

psychological examination would have developed admissible evidence. Sheer conjecture on appeal is not enough to establish ineffective assistance of counsel.

## 2. *Prejudice*

Even if any of the above decisions of counsel were unreasonable, Parker has still failed to show that any prejudice resulted from counsel's actions. "To establish . . . prejudice . . . a defendant 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Upchurch v. Bruce*, 333 F.3d 1158, 1163 (10th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694). In view of the other evidence properly admitted at trial, Parker has not shown a reasonable probability that the result of his trial would have been different had counsel acted differently. Accordingly, none of counsel's acts, either alone or cumulatively, rise to the level necessary to justify granting the habeas petition.

## C. *Parker is not entitled to an evidentiary hearing*

Parker also argues that he is entitled to an evidentiary hearing on his ineffective assistance claim. AEDPA restricts our ability to grant evidentiary hearings to certain limited circumstances. Section 2254(e)(2) provides that "[i]f the applicant has failed to develop the factual basis of a claim in state court proceedings, the court shall not hold an evidentiary hearing on the claim unless

the applicant" can satisfy one of the two exceptions listed in § 2254(e)(2)(A) and

(B).[7] If, however, the habeas petitioner did not "fail[ ] to develop the factual

basis of a claim in State court," *id.*, then § 2254(e)(2) is not applicable and we

must analyze whether a hearing is required under the pre-AEDPA standard.

*Bryan v. Mullin*, 335 F.3d 1207, 1214 (10th Cir. 2003) (en banc).

Under the pre-AEDPA standard, a habeas petitioner "must first make

allegations which, if proved, would entitle him to relief." *Medina v. Barnes*, 71

F.3d 363, 366 (10th Cir. 1995) (citations omitted). "If the petitioner does that the

court must then determine whether petitioner is entitled to an evidentiary hearing

to resolve any disputed facts underlying his claims." *Id; see also Cannon v.*

*Mullin*, 383 F.3d 1152, 1175 (10th Cir. 2004) (under pre-AEDPA standard,

---

[7] Section 2254(e)(2) reads in its entirety:

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—

(A) the claim relies on—

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

petitioner is entitled to an evidentiary hearing if "his allegations, if true and not contravened by the existing factual record, would entitle him to habeas relief"). No hearing is necessary if we can resolve the petitioner's claims on their merits based solely on the record before us. *See, e.g., Torres v. Mullin*, 317 F.3d 1145, 1161 (10th Cir. 2003).

Thus, a threshold question is whether the habeas petitioner was diligent in trying to develop the record in state court. "[A] failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000). A habeas petitioner acts diligently where he "sought to develop the factual basis underlying his habeas petition . . . but a state court prevented him from doing so." *Smallwood v. Gibson*, 191 F.3d 1257, 1266 (10th Cir. 1999). Here, Parker filed with the OCCA a "Motion to Supplement the Record and Application for Evidentiary Hearing on Ineffective Assistance of Counsel." App. at 1018. The OCCA denied Parker's request for a hearing, and the district court agreed. While merely requesting a hearing in state court may not be enough to satisfy the requirement that he diligently seek to develop a factual basis for his claim, *see Cannon,* 383 F.3d at 1176, Parker also submitted several affidavits and a memorandum of law in support of his request. In our view, Parker has acted diligently in attempting to develop the factual basis of his

ineffective assistance claim in state court. We thus apply the pre-AEDPA standard to his claim that he is entitled to an evidentiary hearing. Under this standard, we again turn to the *Strickland* standard for ineffective assistance of counsel and ask whether Parker would be entitled to habeas relief.

In his motion for an evidentiary hearing, Parker argued that his trial counsel failed to use available evidence and did not adequately investigate potentially exculpatory evidence. Specifically, he argued that an evidentiary hearing was required to address counsel's alleged failures in the following areas: (1) not calling the child's former babysitter to testify to allegations of sexual abuse made against her husband by the child's mother; (2) not calling the child's younger sister to testify; (3) not presenting evidence, by means of physical examination or an in camera inspection, to rebut the child's testimony that Parker had a mole on his genitalia; (4) not introducing evidence that James Lovett's testimony focused only on the last incident of alleged abuse that may have occurred in a different county; (5) not introducing a videotaped interview between the child and Corporal Berry of the Tulsa Police Department; and (6) failing to investigate other possible sources for the child's excessive sexual knowledge.

We have already determined that Parker's allegations with respect to (1), (2), and (3) do not justify our granting habeas relief. Parker has failed to adduce any additional evidence on these claims in connection with his motion for an

evidentiary hearing that would alter our analysis. *See Medina*, 71 F.3d at 367 (finding petitioner's claim to evidentiary hearing was meritless because he had not pointed to any new evidence to support his assertion). Thus, no evidentiary hearing is required on these grounds. Regarding (4), (5), and (6), as explained below, we similarly find that Parker would not be entitled to habeas relief under *Strickland*, and we therefore deny an evidentiary hearing on these grounds as well.

1. *Failure to introduce evidence that Lovett's testimony only referred to the "last incident" of abuse*

As noted above, DHS caseworker James Lovett conducted an interview with the child. Parker argues that his trial counsel was ineffective in failing to introduce evidence that Lovett's interview focused only on the "last incident" of abuse, which, according to Lovett's report, occurred in either late February or early March, 1996. Parker argues that this is significant for two reasons: first, the state charged Parker with sexual abuse for acts occurring between June 1, 1994 and October 1, 1995; and second, as of February or March, 1996, Parker had moved from Tulsa county to Osage county. Thus, Parker argues that Lovett's testimony was inadmissible because it focused on an event that occurred in another county and outside the relevant time frame charged in the information. App. at 1022.

We reject Parker's argument because it is clear that Lovett's trial testimony was not limited to the last incident of abuse. Parker's allegations are therefore contravened by existing factual record, and no evidentiary hearing is required to resolve disputed facts. First, a review of the child's testimony reveals that she did not segregate specific episodes by date. Therefore, absent a specific declaration by Lovett to the contrary, it was reasonable for the jury to assume that his testimony referred to the totality of abuse, not a single episode. More importantly, Lovett testified on direct examination that the child stated in the interview that Parker had been "messing with her" for "approximately the past year." *Id.* at 480. Given this testimony, it is difficult to imagine what Parker's counsel could have done in an attempt to limit Lovett's testimony to only the last incident of abuse. As such, Parker is not entitled to an evidentiary hearing on this ground.

2. *Failure to introduce videotape of interview with the child*

In his motion for an evidentiary hearing, Parker argued that his trial counsel was ineffective for failing to introduce a videotape of an interview between the child and Corporal Berry of the Tulsa Police Department. According to Parker, during the interview the child made several statements that could have been used to impeach the child's trial testimony. When cross-examining Berry at trial, Parker's counsel attempted to use a written transcript of the videotape, but the

trial court excluded the transcript on foundation grounds.  App. at 515.  Parker does not dispute this ruling.  Instead, he argues that "[t]here simply is no explanation in the record why the videotape itself was not introduced."  *Id.* at 1024.

But having reviewed the entirety of Berry's testimony, there *is* an explanation for why Parker's trial counsel did not attempt to introduce the actual videotape.  After the trial court ruled that the transcript was inadmissible, Parker's counsel continued to question Berry about statements made by the child during the interview.  The prosecution objected, arguing that any prior inconsistent statements made by the child during the interview with Corporal Berry would be hearsay because they were not made under oath.  App. at 518.  Referencing Okla. Stat. tit. 12, § 2801(4)(a), the trial judge agreed.  *Id.*  Thus, even assuming that Parker's characterization of the videotape is accurate, nothing in the record indicates that a reasonable attorney would have sought to introduce evidence that the trial court had ruled inadmissible.  *See Mayes v. Gibson*, 210 F.3d 1284, 1289 n.3 (10th Cir. 2000) (applying pre-AEDPA standards and finding that no evidentiary hearing needed because nothing in the record indicated that a

reasonable attorney would have acted differently).  Under these circumstances Parker's counsel was not deficient in failing to introduce the videotape.[8]

>  3.  *Failure to investigate other possible sources for the child's sexual knowledge*

Finally, Parker argued in his motion for an evidentiary hearing that his trial counsel should have investigated a videotaped interview between Berry and the child's mother.  During the interview, the child's mother told Berry about several incidents that, according to Parker, could have been sources of the child's excessive sexual knowledge.  First, on one occasion the child grabbed her father's penis.  Second, the child was found in her closet with her half-brother, and the two were "kind of checking out each other."  And third, the child took baths with her four brothers on several occasions.  App. at 1026.  Parker argues that his trial counsel was ineffective in failing to investigate these alleged incidents.

We reject the argument that Parker's trial counsel did not investigate other possible sources of the child's excessive sexual knowledge.  When cross-examining the child's mother, Parker's counsel asked questions about "some sexual play" between the child and some older boy cousins and half-brother.

---

[8] In addition, trial counsel's decision not to introduce the videotape can be attributed to a reasonable trial strategy.  Although we do not have the videotape, the state alleges that it would have opened the door to damaging evidence such as Parker's general dishonesty, violence towards the child's sister, and "sexual exploitativeness."  App. at 1088.

-50-

App. at 463. Parker's counsel even quoted from Berry's interview where the mother talked about the child "touching her dad." *Id.* at 464. Finally, Parker's trial counsel stated to the judge that the purpose of such testimony was to suggest alternative sources for the child's sexual knowledge. *Id.* at 462. Parker's allegations are thus contravened by existing factual record. On the record before us, Parker's counsel was not deficient since he in fact used the information at trial.

### 4. Conclusion to ineffective assistance claims

To summarize, we conclude that the OCCA did not unreasonably apply *Strickland* to the allegations of ineffective assistance of counsel because none of the trial counsel's actions discussed above were deficient based on *Strickland's* objective standard of reasonableness. Parker additionally failed to show that any prejudice resulted from counsel's action. Finally, because Parker's allegations would not entitle him to habeas relief, we hold that Parker was not entitled to an evidentiary hearing on his ineffectiveness claim.

### D. Parker has waived his remaining ineffective assistance of counsel arguments on appeal

Parker raises several other alleged failures of counsel to object at trial, all of which he has waived by failing to assert them in his district court habeas petition. *See Jones v. Gibson*, 206 F.3d 946, 958 (10th Cir. 2000); *Rhine v. Boone*, 182 F.3d 1153, 1154 (10th Cir. 1999). These alleged errors include

(1) failing to object to the judge's conversation with the child in chambers before trial, (2) failing to object when the trial court did not conduct a hearing before admitting testimony about the investigators' interviews with the child, (3) failing to object to Dr. Inhoffe's and Lovett's testimony discussing incidents of abuse not alleged in the indictment, (4) failing to object to a number of questions by the prosecutor, (5) failing to object to statements in the prosecutor's closing argument regarding his belief in the truthfulness of the witnesses, and (6) failing to object to Parker's conviction under a statute that was not in effect at the time of the abuse.

## V.  CONCLUSION

In conclusion, we cannot find that the OCCA's determination on direct appeal was contrary to or an unreasonable application of Supreme Court precedent, as required by AEDPA.    *See* 28 U.S.C. § 2254(d).  Furthermore, we find that Parker has not made a sufficient showing to be entitled to an evidentiary hearing on his ineffective assistance of counsel claim.  Because we find no single constitutional error, we also must reject Parker's argument that cumulative error resulted.  Accordingly, we AFFIRM the district court's denial of Parker's habeas corpus petition.