**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 18, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

STEVEN RAY WILLIAMS,

          Petitioner-Appellant,

v.

MIKE ADDISON, Warden,
ATTORNEY GENERAL OF THE
STATE OF OKLAHOMA,

          Respondents-Appellees.

No. 08-6009
(D.C. No. 5:07-CV-00503-R)
(W.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **PORFILIO**, and **O'BRIEN**, Circuit Judges.

Steven Ray Williams was convicted in Oklahoma state court for making a lewd and indecent proposal to a child under sixteen years of age. Following an unsuccessful direct appeal, he filed a 28 U.S.C. § 2254 habeas petition in the federal district court. The petition was denied.

---

[*]    After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Williams now appeals. We issued a certificate of appealability to consider whether Williams' trial counsel was ineffective for not pursuing a defense that the victim was sixteen years old at the time of the proposal. We affirm.

## BACKGROUND

In 2004, Williams was charged with three counts of lewd molestation of S.J., his step-daughter; one count of making a lewd and indecent proposal in 2000 to K.J., his friend's daughter; and one count of indecent exposure toward K.J. in 2002. Williams was acquitted on the molestation and exposure counts. But he was convicted, as mentioned above, on the lewd-and-indecent-proposal count. That count was premised on Williams asking K.J., in a lewd and lascivious manner, "Wouldn't it feel so good to have sex with me[?]" R., Vol. 2 at 130.

At trial, K.J. testified that Williams began commenting on her appearance in the summer of 2000, when she was fifteen-and-a-half years old. He would say that she was "really pretty" and had big "boobs." *Id*., Vol. 5 at 834, 835. Williams' behavior soon escalated. When K.J. was inside Williams' house one day doing "billing . . . for [his] hardware store," he "grabbed [her] arm" and kissed her. *Id.* at 836. On a subsequent occasion, again when K.J. was in the home doing billing work, Williams forced her onto a bed, attempted to rub and kiss her, and asked, "Wouldn't it feel good to have sex with me?" *Id.* at 838. K.J. began "screaming and kicking," and when Williams "finally let [her] go," she ran home. *Id.* She kept the incident to herself for some time, however, because

she "didn't think anyone would really listen to [her] and [she] didn't want to put [the] families through all of this." *Id.* at 844-45.

On cross-examination, Williams' counsel attempted to undermine K.J.'s accusations by, among other things, suggesting that if she had screamed, she would have been heard by Williams' son, whom she was dating. Specifically, defense counsel noted that K.J. had provided a written statement to Sheriff's Investigator Brian Layton, in which she claimed that around the time of incident, Williams' son "was in the garage working on his truck." *Id.* at 863 (quotation marks omitted). Defense counsel then elicited from K.J. that Williams' son did not come inside after she screamed. *Id.* at 864.

Williams' defense, identified initially during opening remarks, was that he was merely asking K.J. whether it would "be better to wait until [she was] older to have sex?" *Id.*, Vol. 2 at 158. Williams later testified in support of that defense, explaining that he had a "father-daughter relationship" with K.J., and that he was attempting to discourage her from "having sex at such a young age" when she was seeing his son. *Id.*, Vol. 7 at 1356.

The jury found Williams guilty, and he was sentenced to ten years' imprisonment. On appeal to the Oklahoma Court of Criminal Appeals (OCCA), Williams argued, among other things, that his trial counsel provided ineffective assistance because he failed to pursue a defense that K.J. was over sixteen years old when Williams made the proposal. The ineffectiveness was premised on the

fact that the garage was not built until after K.J. had turned sixteen in October 2000. Consequently, Williams could not have been guilty of making a lewd proposal to a child under sixteen if Williams' son was, as K.J. asserted, in the garage when the proposal occurred.

Williams moved for an evidentiary hearing and to supplement the appellate record. He submitted documents concerning the garage's construction and affidavits indicating that, during trial counsel's cross-examination of K.J., Williams alerted his counsel to the discrepancy about the garage. Specifically, in his affidavit, Williams claimed:

> I told my trial attorney . . . , "That's not right. I don't even know if the garage was there. I don't think [my son] was in the garage because there was no garage at that time." After I told [my attorney] those statements, he just shrugged his shoulders, made a motion with his hands to silence and told me, "[W]e're not going there."

*Id.*, Vol. 9 at 1900.

The OCCA affirmed Williams' conviction, denying his motion and rejecting his ineffective-counsel argument:

> [Williams] claims this evidence [of the garage's construction date] would have shown it was factually impossible for him to have propositioned [K.J.] during the time frame she testified to. Yet at trial, [Williams] admitted having a conversation of a sexual nature with [K.J.] during that time frame; he simply recalled the exact wording of his statements a bit differently. Trial counsel's strategic

> decisions are entitled to considerable deference, and [Williams] has not raised a strong possibility that counsel's decision here undermines confidence in the outcome of the trial.

*Id.* at 1940.

Williams next petitioned the federal district court for habeas relief, which the district court denied.

## DISCUSSION

### I.  Standards of Review

Under the Anti-Terrorism and Effective Death Penalty Act (AEDPA), a writ of habeas corpus will not be granted unless the state court's adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence in the state court proceeding.  28 U.S.C. § 2254(d)(1)-(2).  Williams bases his request for habeas relief on the first AEDPA prong, arguing that "[t]he OCCA's decision was contrary to and involved an unreasonable application of" *Strickland v. Washington*, 466 U.S. 668 (1984).  Aplt. Br. at 21.

### II.  Ineffective Assistance of Counsel

*Strickland* mandates a two-pronged standard for claims of ineffective assistance of counsel.  There must be both deficient performance by counsel and prejudice resulting from counsel's deficient performance.  *See Strickland*,

466 U.S. at 687. To show prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Williams argues that the OCCA resolved his ineffective-assistance argument using a standard contrary to *Strickland*. The OCCA defined *Strickland*'s "reasonable probability" of a different result as requiring a "*strong possibility* that counsel's [performance] . . . undermines confidence in the outcome of the trial," R., Vol. 9 at 1940 (emphasis added), rather than a "*probability* sufficient to undermine confidence in the outcome," *Strickland*, 466 U.S. at 694 (emphasis added). We need not decide whether "strong possibility" is the quantum of probability the Supreme Court had in mind when it expressed prejudice in terms of undermining confidence in the trial's outcome. The OCCA's determination that Williams failed to establish deficient performance dooms his ineffective-assistance claim.[1]

In reviewing trial counsel's performance, we "must be highly deferential" and we "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action

---

[1] "This court can affirm the denial of habeas relief on whichever *Strickland* prong is the easier to resolve." *Romano v. Gibson*, 239 F.3d 1156, 1181 (10th Cir. 2001).

might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (quotation omitted). Our deference is substantial under AEDPA because the OCCA applied this principle. *See Parker v. Scott*, 394 F.3d 1302, 1320 (10th Cir. 2005). Accordingly, we may grant habeas relief only if the OCCA "unreasonably applie[d] that principle to the facts of [Williams'] case." *See Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quotation omitted). In other words, the OCCA's decision "must have been more than incorrect or erroneous[,] . . . [it] must have been objectively unreasonable." *Id*. at 520-21 (quotation omitted).

Trial strategy involves whether to raise a particular defense. *Anderson v. Attorney Gen. of Kan.*, 425 F.3d 853, 859 (10th Cir. 2005). Williams argues that the defense concerning the garage's construction date should have been raised at the start of trial,[2] or at the latest, during K.J.'s cross-examination. A defense involving the garage's construction date, however, could have signaled to the jury that Williams was not contesting that he propositioned K.J. for sex, and that he instead was simply claiming it was not illegal. If the jury developed such a view of the defense, it might have been more inclined to find Williams guilty on the molestation and exposure counts. Further, success with the garage defense would have been questionable, because the jury could simply have viewed K.J.'s

---

[2]     Williams contends that if defense counsel had shown him K.J.'s written statement concerning the garage, he could have pursued "a meaningful defense . . . that the garage did not exist until after [K.J.'s] 16th birthday." Opening Aplt. Br. at 29.

recollection of the garage's existence as a minor error of memory, given that the incident with Williams occurred several years before she mentioned the garage to Investigator Layton. And if the defense had been raised during K.J.'s cross-examination, there would have been the additional negative consequence of contradicting the earlier-announced defense strategy, which was that Williams was simply counseling K.J. about sexual activity, rather than propositioning her.

Given the risks inherent in the garage defense, the OCCA did not unreasonably resolve Williams' *Strickland* claim.

## CONCLUSION

The judgment of the district court is AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge